# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

      Plaintiff,

vs.                                          No. CR 10-1922 JB

CARMINDO ANGEL ALMENDARES-SOTO,

      Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on the Defendant's Sentencing Memorandum, filed September 30, 2010 (Doc. 22)("Sentencing Memo."). The Court held a sentencing hearing on October 21, 2010. The primary issues are: (i) whether the Court should depart downward from the advisory sentencing Guideline range because of Defendant Carmindo Angel Almendares-Soto's cultural assimilation; and (ii) whether the Court should vary because of Almendares-Soto's cultural assimilation and other factors under 18 U.S.C. § 3553(a). The Court finds that a downward departure from the Guidelines range is not warranted, because there is nothing in Almendares-Soto's circumstances which places him outside the heartland of cases, thereby warranting a departure. The Court finds that, upon weighing the factors set forth in 18 U.S.C. § 3553(a), a sentence in the Guideline sentencing range is reasonable; therefore, a downward variance is not warranted. The Court will sentence Almendares-Soto to a sentence at the low end of the sentencing range set forth by the Guidelines -- a sentence of 8 months.

## FACTUAL BACKGROUND

Almendares-Soto states that he was born in 1974 in Honduras. <u>See</u> Presentence Investigation

Report ¶ 31, at 8 (disclosed September 24, 2010)("PSR").  Almendares is thirty-six years old and has lived in the United States most of his adult life.  See Sentencing Memo. at 2.  He asserts that he came to the United States from Honduras when he was a teenager.  See Sentencing Memo. at 2.  Almendares-Soto reports his usual occupation as a laborer.  See PSR ¶ 37, at 9.  In the United States, he has worked in construction, roofing, dairy farming, meat processing, and the fields.  See Sentencing Memo. at 3.

While in the United States, Almendares-Soto accumulated two misdemeanor convictions.  See PSR ¶ 21, at 5.  These convictions were for driving while impaired and for leaving the scene of an accident.  See PSR ¶ 21, at 5.  Almendares-Soto also has two felony convictions.  See PSR ¶¶ 22-23, at 6.  Almendares-Soto's first felony conviction was for grand larceny.  See PSR ¶ 22, at 6.  Almendares-Soto's second felony conviction was for unlawful use or display of license or identification card.  See PSR ¶ 23, at 6.  On May 28, 2008, Almendares-Soto was sentenced to five years in the state penitentiary with all but the first year of the sentence suspended for this felony conviction.  See Sentencing Memo. at 5.

During his time in the United States, Almendares-Soto has also been arrested for aggravated assault with a deadly weapon, possession of cocaine, infliction of corporal injury on a spouse and threatening crime with intent to terrorize, and petit larceny.  See PSR ¶¶ 26-29, at 7-8.

Almendares-Soto was deported to Honduras on November 11, 2008, following his felony conviction for  unlawful use or display of license or identification card.  See PSR ¶¶ 4, 12, 23, at 3, 4, 6-7.  After he was deported, Almendares-Soto resided in Mexico, working construction, until his re-entry into the United States and his arrest in this case.  See Sentencing Memo. at 3.  Alemendares-Soto's illegal re-entry conviction in this case appears to be his second documented illegal entry into the United States.  See PSR ¶¶ 4, 12, 22-23, at 3, 4, 6-7.

-2-

Almendares-Soto has two minor children who are citizens of the United States.  See id. ¶ 32, at 8.  Almendares-Soto believes that his children live in Guymon, Oklahoma.  See Sentencing Memo. at 2.  He alleges that he lost contact with his former fiancé and children after the United States deported him in November 2008.  See id. at 2.  His children are Luis Angel Almendares, age five years, and Jade Margarita Almendares, age three years.  See id. at 2.  The children's mother is Laura Rodriguez.  See Sentencing Memo. at 2.  Almendares-Soto's mother and siblings live in Honduras -- except for one sister, Ledia Almendares, who lives in Arkansas, and one brother, Carlos Roberto Almendares, who lives in Oklahoma.  See id. at 2-3.  Almendares-Soto's mother is over fifty years old and suffers from severe asthma.  See id. at 3.  Almendares-Soto's father, Carmindo Almendares, died approximately seven years ago.  See id. at 3.

Almendares-Soto asserts that he returned to the United States, because he believed that he would be able to find work.  See id. at 3.  Almendares-Soto was encountered in New Mexico by an United States Border Patrol agent on April 22, 2010.  See PSR ¶¶ 3-4, at 3.

## PROCEDURAL BACKGROUND

On August 16, 2010, Almendares-Soto entered into a Non-Standard Fast Track Plea Agreement under rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure, in which he pled guilty to a one-count Indictment charging re-entry of removed alien in violation of 8 U.S.C. §§ 1326(a) and (b).  See Non-Standard Fast Track Plea Agreement at 2, filed August 16, 2010 (Doc. 19)("Plea Agreement").  The United States Probation Office disclosed the Pre-Sentence Investigation Report on September 24, 2010.

The PSR calculates Almendares-Soto's adjusted offense level as 9.  Paragraph 12, page 4, of the PSR enhances the basic offense level by 4 levels as a result of the 2008 felony conviction. The PSR calculated Almendares-Soto's offense level as follows:

| | |
|---|---|
| Base Offense Level | 8 |
| Special Offense Characteristic (felony) | +4 |
| Victim Related Adjustment | 0 |
| Role Adjustment | 0 |
| Obstruction Adjustment | 0 |
| Adjusted Offense Level | 12 |
| | |
| Adjustment for Acceptance of Responsibility | -2 |
| Total Offense Level | 10 |
| | |
| Total Offense Level pursuant to Rule 11(c)(1)(C) | **9** |

The PSR calculates Almendares-Soto's criminal history category as III. The PSR calculated Almendares-Soto's criminal history category as follows:

| | |
|---|---|
| Grand Larceny (Sent. 5/29/08 – released 11/11/08) | 2 |
| Unlawful use of ID (Sent. 5/16/08 – released 11/11/08) | 2 |
| Commission less than 2 yrs. after release for above sentences | 2 |
| | |
| Total Criminal History points | **6** |

Six points places Almendares-Soto in criminal history category of III.

An offense level of 10 and a criminal history category of III places Almendares-Soto in zone C, which results in an advisory Guideline range of 10 to 16 months. The parties agreed, however, in the Plea Agreement, to an offense level of 9. Under the sentencing Guidelines, an offense level of 9 and a criminal history category of III results in a sentencing range of 8 to 14 months. See PSR, Part D, at 10.

On September 30, 2010, Almendares-Soto filed and submitted a Sentencing Memorandum requesting a sentence below the Guidelines imprisonment range of 8 to 14 months. See Sentencing Memo. at 9. Almendares-Soto asks the Court to vary and/or depart downward from the calculated sentencing Guidelines range. See Sentencing Memo. at 9. Almendares-Soto does not object to any of the factual statements or calculations in the PSR. See Sentencing Memo. at 5-9. Almendares-Soto objects, however, to the changes in the Guidelines over the years, arguing that the United States

Sentencing Commission has over time "radically" changed the provisions in the Guidelines regarding illegal re-entry.  Sentencing Memo. at 5.

On October 4, 2010, the United States filed a response.  See United States' Response to Defendant's Sentencing Memorandum Filed September 30, 2010 (Doc. 22), filed October 4, 2010 (Doc. 24)("Response").  The United States argues that a departure based on cultural assimilation is not warranted in this case, because the facts are not sufficiently unusual to remove the case from the conduct that the Guidelines contemplates.  See Response at 3.  The United States also contends that, after consideration of the factors set forth in 18 U.S.C. § 3553(a), a variance is not warranted in this matter.  See Response at 4.

The Court originally scheduled Almendares-Soto to be sentenced on October 5, 2010.  On October 4, 2010, Almendares-Soto filed a motion to continue.  See Defendant's Joint Motion to Continue Sentencing, filed October 4, 2010 (Doc. 23).  The Court held Almendares-Soto's sentencing hearing on October 21, 2010.  The Guideline Manual that was in effect on October 21, 2010, the date of Almendares-Soto's sentencing, is the 2009 version.

## LAW REGARDING THE RE-ENTRY OF AN EXCLUDED ALIEN

Section 1326 of Title 8 of the United States Code addresses the penalties for the crime of re-entry of a removed alien.  The statute states:

(a) In general

Subject to subsection (b) of this section, any alien who--

> (1) has been denied admission, excluded, deported, or removed or has departed the United States while an order of exclusion, deportation, or removal is outstanding, and thereafter

> (2) enters, attempts to enter, or is at any time found in, the United States, unless (A) prior to his reembarkation at a place outside the United States or his application for admission from foreign contiguous territory, the Attorney

General has expressly consented to such alien's reapplying for admission; or (B) with respect to an alien previously denied admission and removed, unless such alien shall establish that he was not required to obtain such advance consent under this chapter or any prior Act,

shall be fined under Title 18, or imprisoned not more than 2 years, or both.

(b) Criminal penalties for reentry of certain removed aliens

Notwithstanding subsection (a) of this section, in the case of any alien described in such subsection--

(1) whose removal was subsequent to a conviction for commission of three or more misdemeanors involving drugs, crimes against the person, or both, or a felony (other than an aggravated felony), such alien shall be fined under Title 18, imprisoned not more than 10 years, or both;

(2) whose removal was subsequent to a conviction for commission of an aggravated felony, such alien shall be fined under such title, imprisoned not more than 20 years, or both;

(3) who has been excluded from the United States pursuant to section 1225(c) of this title because the alien was excludable under section 1182(a)(3)(B) of this title or who has been removed from the United States pursuant to the provisions of subchapter V of this chapter, and who thereafter, without the permission of the Attorney General, enters the United States, or attempts to do so, shall be fined under Title 18 and imprisoned for a period of 10 years, which sentence shall not run concurrently with any other sentence. [sic] or

(4) who was removed from the United States pursuant to section 1231(a)(4)(B) of this title who thereafter, without the permission of the Attorney General, enters, attempts to enter, or is at any time found in, the United States (unless the Attorney General has expressly consented to such alien's reentry) shall be fined under Title 18, imprisoned for not more than 10 years, or both.

For the purposes of this subsection, the term "removal" includes any agreement in which an alien stipulates to removal during (or not during) a criminal trial under either Federal or State law.

8 U.S.C. § 1326 (emphasis added).

-6-

## RELEVANT LAW REGARDING GUIDELINE SENTENCING MANUALS

The Supreme Court of the United States in Rita v. United States, 551 U.S. 338 (2007), described the method generally employed in developing the Guidelines, stating that the Guidelines were developed based on the Sentencing Commission's study of empirical evidence.  See Rita v. United States, 551 U.S. at 348.

> Rather than choose among differing practical and philosophical objectives, the Commission took an 'empirical approach,' beginning with an empirical examination of 10,000 presentence reports setting forth what judges had done in the past and then modifying and adjusting past practice in the interests of greater rationality, avoiding inconsistency, complying with congressional instructions, and the like.

Rita v. United States, 551 U.S. at 349.  The Supreme Court recognized, however, that "[t]he Commission's work is ongoing," and that the "statutes and the Guidelines themselves foresee continuous evolution helped by the sentencing courts and the courts of appeals in that process." Rita v. United States, 551 U.S. at 349.

> The sentencing courts, applying the Guidelines in individual cases may depart (either pursuant to the Guidelines or, since Booker, by imposing a non-Guidelines sentence). The judges will set forth their reasons.  The Courts of Appeals will determine the reasonableness of the resulting sentence.  The Commission will collect and examine the results.  In doing so, it may obtain advice from prosecutors, defenders, law enforcement groups, civil liberties associations, experts in penology, and others. And it can revise the Guidelines accordingly.

Rita v. United States, 551 U.S. at 350.  In 2007, the Supreme Court reiterated that the Guidelines were generally a product of careful study based on extensive empirical evidence derived from the review of thousands of individual sentencing decisions.  See Gall v. United States, 522 U.S. 38, 46 (2007).  The Supreme Court recognized, however, that "not all of the Guidelines are tied to this empirical evidence."  Gall v. United States, 522 U.S. at 46 n.2.

## RELEVANT LAW REGARDING U.S.S.G. § 2L1.2

The re-entry Guideline provision, see U.S.S.G. § 2L1.2, was part of the original Guidelines.

See U.S.S.G. § 2L1.2, at 2.102 (1987). The original Guidelines, based on the Sentencing Commission's past-practice study, had no special enhancements for defendants with certain prior convictions. See U.S.S.G. § 2L1.2, at 2.102 (1987). Over time, the Sentencing Commission materially changed the Guidelines provision regarding illegal re-entry, adding a series of prior-conviction enhancements, which resulted in much longer sentences. Compare U.S.S.G. § 2L1.2, at 2.102 (1987), with U.S.S.G. § 2L1.2, at 264-65 (2010).

When the Guidelines went into effect in 1987, the Sentencing Commission drafted section 2L1.2 to cover illegal entry and illegal re-entry, assigning both crimes a base level of 6. See U.S.S.G. § 2L1.2, at 2.102 (1987). In 1987, the Sentencing Commission's study showed that the average sentence for immigration offenders was a sentence of 5.7 months. See United States Sentencing Commission, Supplementary Report on the Initial Sentencing Guidelines and Policy Statements at 69 tbl.3 (June 18, 1987).

In 1988, a year after the Guidelines went into effect, the Commission changed the base offense level for illegal re-entry from 6 to 8. See U.S.S.G. app. C, amend. 38 (1988). The base offense level remains at 8 to this day. See U.S.S.G. § 2L1.2, at 264-65 (2010).

The 1989, the Commission altered the illegal re-entry Guideline by adding a 4-level increase for those who have been deported following a conviction for a "felony" not involving a violation of immigration laws. U.S.S.G. § 2L1.2, at 2.112 (1989). The only other place the Commission had included any sort of prior-conviction enhancement was in the alien-smuggling Guideline, which included a 2-level increase for a defendant who had previously committed the same offense. See U.S.S.G. § 2L1.1(b)(2), at 2.111 (1989)("If the defendant previously has been convicted of smuggling, transporting, or harboring an unlawful alien, or a related offense, increase by 2 levels."). The Commission provided no reason for the increase, but only documented what it did: "This

specific offense characteristic is in addition to, and not in lieu of, criminal history points added for the prior sentence."  U.S.S.G. app. C, amend. 193 (1989).

The 4-level enhancement has no temporal limitation, that is, a conviction qualifies regardless of its age.  See United States v. Olmos-Esparza, 484 F.3d 1111, 1116 (9th Cir. 2007).  Unlike when calculating a defendant's criminal history score, even very old convictions count for purposes of enhancement.  See United States v. Olmos-Esparza, 484 F.3d at 1116.

Despite the amendments, "the[re was no] . . . immediate impact, given the small number of illegal re-entry cases brought in the early 1990s."  Doug Keller, Why the Prior Conviction Sentencing Enhancements in Illegal Re-Entry Cases are Unjust and Unjustified (and Unreasonable too), 51 B.C. L. Rev. 719, 737 (2010)(citing Oversight of the United States Sentencing Commission: Are the Guidelines Being Followed?  Hearing before the Subcomm. On Criminal Justice Oversight of the S. Comm. On the Judiciary, 110th Cong. 7 (2000)(statement of John R. Street, Vice-Chair, U.S. Sent'g Comm'n).  In 1992, for example, only 652 defendants were sentenced for illegal re-entry.  See Keller, supra at 737 (citation omitted).  Through the next decade, prosecutions for illegal re-entry increased.  In 1995, prosecution for illegal re-entry resulted in 1,528 sentencings for illegal re-entry, and in 2000, sentencings for illegal re-entry increased to 6,191, or nearly twenty percent of the federal docket.  See Keller, supra at 737 (citations omitted).

## RELEVANT LAW REGARDING DOWNWARD DEPARTURE BASED UPON CULTURAL ASSIMILATION

In United States v. Serrata, 425 F.3d 886 (10th Cir. 2005), the United States Court of Appeals for the Tenth Circuit considered whether the district court abused its discretion in using a family-circumstances departure under U.S.S.G. § 5K2.0  to adjust the defendants' Guidelines sentences.  See 425 F.3d at 911.  The Tenth Circuit articulated the standard it would use in its

review.

> This standard includes the following inquiries:
>
> (1) whether the factual circumstances supporting a departure are permissible departure factors;
>
> (2) whether the departure factors relied upon by the district court remove the defendant from the applicable Guideline heartland thus warranting a departure,
>
> (3) whether the record sufficiently supports the factual basis underlying the departure, and
>
> (4) whether the degree of departure is reasonable.
>
> United States v. Collins, 122 F.3d 1297, 1303 (10th Cir. 1997).  We have described the first inquiry as a legal question and the second as essentially a factual question. Id.  We note that what constitutes a guideline's heartland is a legal question and our review on that question is not deferential.  Id. at 1303 n.4.

425 F.3d at 911-12.  The Tenth Circuit recognized that family circumstances are a discouraged factor under the Guidelines[1] and "are not ordinarily relevant in determining whether a sentence should be outside the applicable [G]uideline range," unless the circumstances are present in "some unusual or exceptional way."  United States v. Serrata, 425 F.3d at 913 (citations omitted).  See United States v. Marquez-Olivas, 172 F. App'x 855 (10th Cir. 2006)(indicating that "only in extraordinary circumstances may a defendant's cultural assimilation warrant" a departure from the Guideline range)(citing United States v. Rivas-Gonzalez, 365 F.3d 806, 812 (9th Cir. 2004)(stating that "[a downward] departure for cultural assimilation, like a departure for family ties [may be] granted only in extraordinary circumstances)(internal quotation marks omitted")); United States v.

---

[1] Section 5H1.6 of the Sentencing Guidelines addresses the relevance of family circumstances.  It states that "family ties and responsibilities are not ordinarily relevant in determining whether a departure may be warranted."  U.S.S.G. § 5H1.6.  This provision did not change in the November 1, 2010 Sentencing Guidelines.

Bautista, 258 F.3d 602, 607 (7th Cir. 2001)(concluding that a downward departure on the grounds

of cultural assimilation "would be akin to one based on 'family ties' -- a discouraged factor that is

grounds for departure only in extraordinary circumstances").  The United States Court of Appeals

for the Ninth Circuit came to a similar conclusion in United States v. Lipman, 133 F.3d 726 (9th Cir.

1998).  In that case, the Ninth Circuit found that "a sentencing court may depart on the basis of

cultural assimilation if it finds that the defendant's circumstances remove his case from the heartland

of cases governed by the relevant individual guidelines and the Guidelines as a whole."  133 F.3d

at 731.

> Moreover, the factor of cultural assimilation is akin to the factor of "family and community ties" discussed under U.S.S.G. § 5H1.6.  Thus, to the extent that cultural assimilation denotes family and community ties, we hold that the district court has the authority to depart on this basis in extraordinary circumstances.  Under U.S.S.G. § 5H1.6, "[f]amily ties and responsibilities and community ties are not ordinarily relevant in determining whether a sentence should be outside the applicable guideline range."  U.S.S.G. § 5H1.6.  But under U.S.S.G § 5K2.0, such circumstances may be relevant if "present to an unusual degree" such that the case is distinguished "from the 'heartland' cases . . . in a way that is important to the statutory purposes of sentencing."  U.S.S.G. § 5K2.0; see also United States v. Mondello, 927 F.2d 1463, 1470 (9th Cir. 1991) (holding that a court may rely on factors listed in U.S.S.G. § 5H1.1-.6 to justify a departure "in extraordinary circumstances").  Whether a defendant's family and community ties are sufficiently "unusual" or "extraordinary" to warrant departure in a particular case is a factual determination that also lies within the discretion of the district court.  See [United States v.] Koon, 518 U.S. [81, 98]; see also U.S.S.G. § 5K2.0 ("Presence of any such factor may warrant departure . . . , under some circumstances, in the discretion of the sentencing court.").

133 F.3d at 730.

The application notes to section 2L1.2 of the Guidelines that became effective November

1, 2010 contain a statement regarding departure based on cultural assimilation.  They state, in part:

> There may be cases in which a downward departure may be appropriate on the basis of cultural assimilation.  Such a departure should be considered only in cases where (A) the defendant formed cultural ties primarily with the United States from having resided continuously in the United States from childhood, (b) those

cultural ties provided the primary motivation for the defendant's illegal reentry or continued presence in the United States, and (C) such a departure is not likely to increase the risk to the public from further crimes of the defendant.

In determining whether such a departure is appropriate, the court should consider, among other things, (1) the age in childhood at which the defendant began residing continuously in the United States, (2) whether and for how long the defendant attended school in the United States, (3) the duration of the defendant's continued residence in the United States, (4) the duration of the defendant's presence outside the United States, (5) the nature and extent of the defendant's familial and cultural ties inside the United States, and the nature and extent of such ties outside the United States, (6) the seriousness of the defendant's criminal history, and (7) whether the defendant engaged in additional criminal activity after illegally reentering the United States.

U.S.S.G. § 2L1.2 app. note 8.

## **RELEVANT LAW REGARDING VARIANCES**

Section 3553(a) of Title 18 of the United States Code requires judges to take certain factors into account when imposing a sentence.  A court shall impose a sentence sufficient, but not greater than necessary to achieve § 3553(a)'s purposes.  See 18 U.S.C. § 3553(a).  In determining the particular sentence it should impose, a court shall consider

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed--

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the kinds of sentence and the sentencing range established for--

(A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines--

(i) issued by the Sentencing Commission pursuant to section 994(a)(1) of title 28, United States Code, subject to any amendments made to such guidelines by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and

(ii) that, except as provided in section 3742(g), are in effect on the date the defendant is sentenced; or

(B) in the case of a violation of probation or supervised release, the applicable guidelines or policy statements issued by the Sentencing Commission pursuant to section 994(a)(3) of title 28, United States Code, taking into account any amendments made to such guidelines or policy statements by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28);

(5) any pertinent policy statement--

(A) issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28, United States Code, subject to any amendments made to such policy statement by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and

(B) that, except as provided in section 3742(g), is in effect on the date the defendant is sentenced.

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

### 1.   Variances Based on District Court's Judgment in a Particular Case and Import under 18 U.S.C. § 3553(a).

In <u>Kimbrough v. United States</u>, 552 U.S. 85 (2007), the Supreme Court stated that, in the

ordinary case, "the Commission's recommendation of a sentencing range will 'reflect a rough

approximation of sentences that might achieve § 3553(a)'s objectives."  552 U.S. at 89.  The

Supreme Court recognized, however, that the sentencing judge is "in a superior position to find facts

and judge their import under § 3553(a) in each particular case."  552 U.S. at 89.

> In light of these discrete institutional strengths, a district court's decision to vary from the advisory Guidelines may attract greatest respect when the sentencing judge finds a particular case "outside the 'heartland' to which the Commission intends individual Guidelines to apply."  On the other hand, while the Guidelines are no longer binding, closer review may be in order when the sentencing judge varies from the Guidelines based solely on the judge's view that the Guidelines range "fails properly to reflect § 3553(a) considerations" even in a mine-run case.

552 U.S. at 89 (internal citations omitted).  See United States v. Smart, 518 F.3d 800, 803 (10th Cir.

2008)("Since the Supreme Court's decision in [United States v.] Booker, [543 U.S. 220 (2005),]

which relegated the Sentencing Guidelines to an advisory status, district courts have been free to

apply any sentence that is 'reasonable' under the sentencing factors listed at 18 U.S.C. § 3553(a).").

## 2. **Variances Based Upon Cultural Assimilation.**

A sentencing court may consider a defendant's cultural assimilation to the United States

when fashioning an appropriate sentence pursuant to the § 3553(a) factors.  See United States v.

Galarza-Payan, 441 F.3d 885, 889 (10th Cir. 2006)("Now that the Guidelines are advisory, courts

will continue to consider a defendant's 'history and characteristics' under § 3553(a)(1).  The

extensiveness of 'family and cultural ties,' however the factor is characterized, will still be part of

tailoring an appropriate sentence.").  But in assessing the reasonableness of a sentence, a court must

weigh the defendant's cultural ties against other factors in § 3553(a), such as: (i) "sentencing

disparities among defendants with similar backgrounds and characteristics[;]" and (ii) "the need for

the sentence to reflect the seriousness of the crime and promote respect for the law."  United States

v. Galarza-Payan, 441 F.3d at 889.  While a court may vary in light of a defendant's cultural ties,

it is not mandated to do so.  See United States v. Sells, 541 F.3d 1227, 1238 (10th Cir. 2008)("That

such a ground for a variance is available certainly does not, however, mean it is compelled.").

## ANALYSIS

Almendares-Soto argues that he deserves a below-Guideline sentence for two reasons: (i) his cultural assimilation and family ties to the United States warrants a downward departure; and (ii) the factors listed in 18 § 3553(a), and his cultural assimilation and family ties to the United States, support a downward variance. In its analysis, the Court applies the Guidelines in effect on the date Almendares-Soto was sentenced. See U.S.S.G. § 1B1.11. The Court finds that a downward departure from the Guidelines range is not warranted, because there is nothing in Almendares-Soto's circumstances which places him outside the heartland of cases, thereby warranting a departure. The Court finds that, upon weighing the factors set forth in 18 U.S.C. § 3553(a), a sentence in the Guideline sentencing range is reasonable; therefore, a downward variance is also not warranted. The Court will sentence Almendares-Soto to a sentence at the low end of the range set forth by the advisory sentencing Guidelines -- a sentence of 8 months.

## I.   A DEPARTURE FROM THE GUIDELINES RANGE OF 8 TO 14 MONTHS BASED ON CULTURAL ASSIMILATION AND FAMILY TIES IS NOT WARRANTED.

Almendares-Soto requests a downward departure based on his familial and cultural ties to the United States. Almendares-Soto contends that he became a de facto citizen of the United States. He asserts that he is culturally assimilated to life in the United States, because he has become more accustomed to life in the United States than to life in Honduras. Almendares-Soto argues that he deserves leniency because he has lived in the United States since he was a teenager and because his two children live in the United States, although he concedes that he has lost contact with them. Furthermore, he contends that he has two siblings who live in the United States -- one in Arkansas and another in Oklahoma. Almendares-Soto argues that, because of his ties to the United States,

being deported represents a much greater hardship to him than it would to other similarly situated defendants who have not developed the family ties and history in the United States that he has developed.

The United States contends that the Court should deny Almendares-Soto's request for a downward departure, because Almendares-Soto has failed to allege circumstances so unusual from other similarly situated aliens to merit a departure.

A district court can determine that cultural assimilation warrants a downward departure if: (i) the factual circumstances supporting the departure are permissible departure factors; (ii) the departure factors remove the defendant from the heartland of cases; (iii) the record supports the factual basis underlying the departure; and (iv) the departure is reasonable.  See United States v. Serrata, 425 F.3d at 911-12.  "[F]amily ties and responsibilities are not ordinarily relevant in determining whether a departure may be warranted."  U.S.S.G. § 5H1.6.

Almendares-Soto is arguing for a downward departure, based on his familial ties, his assimilation by virtue of living in the United States from the time he was a teenager and by virtue of working in the United States, and his familiarity to life in the United States.  The Court believes that Almendares-Soto's familial ties do not counsel departure from the Guidelines sentence, because the presence of his children and two siblings in the United States does not rise to the level of extraordinary circumstances.  See United States v. Serrata, 425 F.3d at 913.  Like Almendares-Soto, many defendants who are convicted of illegal re-entry have lived in the United States for numerous years and have family members who still reside in the United States.  The Court therefore does not believe that Almendares-Soto's circumstances, while unfortunate, are extraordinary, and finds that Almendares-Soto's familial ties do not warrant a departure.  Furthermore, the Court finds that Almendares-Soto's assimilation by virtue of living in the United States and working in the United

-16-

States, and his familiarity with life in the United States are not circumstances that put Almendares-Soto outside the heartland of cases, and therefore, are not circumstances that warrant a downward departure.  In <u>United States v. Herrera-Gonzalez</u>, 304 F. App'x 694 (10th Cir. 2008), the Tenth Circuit addressed whether the district court erred in denying the defendant's request for a downward departure based on his cultural assimilation and familial ties.  <u>See</u> 304 F. App'x 695-96.  The defendant in <u>United States v. Herrera-Gonzalez</u> contended that he was assimilated by virtue of living and working in he United State for many years and that he had extensive family ties, including his wife and children who all resided in the United States and were citizens.  <u>See</u> 304 F. App'x at 695. The Tenth Circuit did not review the district court's decision to deny a downward departure, but noted that, even if it reached the merits of the defendant's argument, the argument was not persuasive.  <u>See</u> 304 F. App'x at 698.  The Tenth Circuit stated: "As to family ties and cultural assimilation, the district court correctly found that [the defendant's] situation did not fall outside the heartland of similar cases."  304 F. App'x at 698.  Similarly, the Court believes that Almendares-Soto's presence in the United States from the time he was a teenager, his work history in the United States, and his contention that he has become accustomed to life in the United States do not warrant a departure, because these circumstances do not fall outside the heartland of cases.  Like Almendares-Soto, many defendants who are convicted of illegal re-entry have lived in the United States for numerous years, thereby becoming accustomed to life in the United States, and have worked in the United States.  Almendares-Soto's criminal history and arrests demonstrate that he has not assimilated into law-abiding United States society.  <u>See</u> PSR ¶¶ 21-23, 26, at 5-7.  Because there is nothing in Almendares-Soto's situation which places his outside the heartland of cases, a downward departure based on cultural assimilation or familial ties to the Unites States is not warranted.  The Court therefore denies Almendares-Soto's request that it downwardly depart from

the advisory Guidelines sentencing range.

Furthermore, while the Court applies the Guidelines in effect on the date Almendares-Soto was sentenced -- October 21, 2010, see U.S.S.G. § 1B1.11 -- even when the Court considers the factors listed in the application notes to U.S.S.G. § 2L1.2 of the Guidelines that went into effect November 1, 2010, the Court believes that a departure based on cultural assimilation is not warranted.   Almendares-Soto is not "in the unique situation of residing in the United States continuously from childhood that might warrant a downward departure based on cultural assimilation." See United States v. Cuellar-Valerio, No. CR 10-1180 JB, 2010 WL 4054143, at *4 (D.N.M. Aug. 31, 2010)(Browning, J.).  Almendares-Soto came to the United States for the first time when he was fifteen-years old.  The Court believes that, in some circumstances, a downward departure based on cultural assimilation might be merited when the person first came to the United States as a teenager.  The Court believes that the other circumstances weigh against granting a downward departure in this case, however.  The Court does not believe that Almendares-Soto has thoroughly assimilated to life in the United States.  It is unclear whether Almendares-Soto attended school in the United States.  The PSR states that "[t]here is no information available regarding the defendant's education and vocational skills history."  PSR ¶ 36, at 9.  Almendares-Soto has familial ties both in the United States and in Honduras.  Almendares-Soto required an interpreter at the sentencing hearing.  See United States v. Cuellar-Valerio, 2010 WL 4054143, at *4.  Almendares-Soto spent the first fifteen years of his life in Honduras and approximately nineteen years in the United States before he was deported.  The Court is seeing an increasing number of young people who come to the United States during their teenage years, while a few years ago, there were more defendants who came when they were two or three, spoke only English, were schooled in United States public schools and were as American as any United States citizen's children.  That latter

category of children appear to be a better category for a departure than does Almendares-Soto, who came here when he was a teenager.  In any case, while the Court believes a departure for cultural assimilation is authorized, the Court does not believe a departure here is warranted based on the facts and circumstances of this case.  The Court does not believe that Almendares-Soto's circumstances place him outside of the heartland of defendants in similar cases that this border court and other federal courts see.  See United States v. Cuellar-Valerio, 2010 WL 4054143, at *4.

## II.   A VARIANCE FROM THE ADVISORY GUIDELINE RANGE, BASED ON THE FACTORS SET FORTH IN 18 U.S.C. § 3553(a), IS NOT WARRANTED.

Almendares-Soto contends that the nature and circumstances of his case, such as his familial ties, his reason for entering the United States, and his cultural assimilation to the United States warrant a downward variance.  The United States argues that, based on the factors set forth in 18 U.S.C. § 3553(a), a downward variance from the advisory Guideline sentencing range is not warranted.  After a careful consideration of the factors set forth in 18 U.S.C. § 3553(a), the Court finds that a sentence within the advisory sentencing Guideline range would constitute an appropriate sentence.

### A.   NATURE AND CIRCUMSTANCES OF THE OFFENSE, AND HISTORY AND CHARACTERISTICS OF THE DEFENDANT.

Nothing about the nature or circumstances of Almendares-Soto's illegal re-entry offense warrants a variance.  Almendares-Soto argues that he deserves special consideration because he illegally re-entered the United States to find work to provide for his children and mother.  Like Almendares-Soto, many defendants charged with illegal re-entry unlawfully entered the United States for the same reasons or similar reasons, and the Court finds these reasons are not exceptional enough to warrant a variance.  Cf. United States v. Navarette-Medina, 554 F.3d 1312, 1313 (10th Cir. 2009)("In several unpublished re-entry cases, we have found no abuse of discretion where

district courts have refused to grant a downward variance based on an alien's noncriminal motivation for re-entering the country."  (citing United States v. Melendez-Dones, 274 F. App'x 726, 728 (10th Cir. 2008)(defendant re-entered country to visit terminally ill sister); United States v. Sanchez-Marioni, 250 F. App'x 840, 841 (10th Cir. 2007)(defendant was bringing nephew to his mother in Arizona out of concern for nephew's safety); United States v. Ramos-Perez, 171 F. App'x 727, 728 (10th Cir. 2006)(defendant re-entered country to earn money for ailing mother's medication))).  If Almendares-Soto's motivation for illegally re-entry was deemed exceptional enough to warrant a variance, more defendants charged with this same crime would qualify for a variance than those who do not.

Almendares-Soto's history and characteristics also do not warrant a variance.  Almendares-Soto alleges that his two children, as well as two of his siblings, reside in the United States.  He contends that he has lived in the United States since he was a teenager and is more accustomed to living in the United States than he is to living in Honduras.  Although the circumstances are unfortunate, the Court does not believe that these circumstances warrant differentiation from other cases.  There are many defendants who have family on both sides of the border.  See United States v. Galarza-Payan, 441 F.3d at 890 (recognizing that there are many "tragic situations" where "families' lives are torn by the border").  If the Court downwardly varied every time it was faced with a defendant who had lived in the United States for part of his or her life, and who had family members in the United States, more defendants would qualify for a variance than those who would not.  Because the Court finds that Almendares-Soto's circumstances do not warrant differentiation from other cases, and because it must weigh Almendares-Soto's cultural ties against the other § 3553(a) factors, such as Almendares-Soto's criminal history, see United States v. Galarza-Payan, 441 F.3d at 889, it finds that a downward variance is not warranted based on Almendares-Soto's

circumstances.

**B.      NEED FOR SENTENCE TO REFLECT THE SERIOUSNESS OF THE OFFENSE, PROMOTE RESPECT FOR THE LAW, PROVIDE JUST PUNISHMENT, AND AFFORD ADEQUATE DETERRENCE.**

The Court believes that a sentence within the advisory Guidelines range will reflect the seriousness of Almendares-Soto's offense, promote respect for the law, provide just punishment, afford adequate deterrence, and protect the public.  Congress has demonstrated that it views the crime of illegal re-entry as serious, not merely regulatory, by imposing a penalty of up to twenty years in prison for those convicted of re-entry subsequent to deportation for an aggravated felony. See 8 U.S.C. § 1326(b)(2).  The Court believes that a sentence below the advisory Guideline range of 8 to 14 months will not reflect the seriousness of Almendares-Soto's offense.

Additionally, a below-guideline sentence would not promote respect for the law, provide just punishment, or provide for adequate deterrence.  Unlike many illegal immigrants who entered the United States, or remain here, unlawfully but who have neither committed crimes nor have been deported, Almendares-Soto illegally entered the United States two times, and was deported once. See PSR ¶ 4, 12, 22-23, at 3, 4, 6.  In violation of the laws of the United States, he disregarded his prior removal order and illegally re-entered the United States.  See PSR ¶¶ 3-5, at 3.  Almendares-Soto's prior sentences and deportation were insufficient to deter him from returning to the United States and committing further crimes.  See PSR ¶¶ 22-23, 29, at 6, 8.  The Court therefore finds that a sentence within the Guidelines range will more adequately reflect the seriousness of the offense, promote respect for the law, provide just punishment, and afford adequate deterrence.

**C.      THE KINDS OF SENTENCES AVAILABLE AND THE SENTENCING RANGE ESTABLISHED BY THE GUIDELINES.**

The advisory Guidelines set forth a sentencing range of 8 to 14 months for a offense level

of nine and a criminal history category of III.  This advisory Guidelines range provides the Court with a variety of options in sentencing, from a lower-end sentence of less than a year, to a sentence of more than a year.  The Court believes a sentence within this range is adequate for sentencing purposes in this case.

> **D.     THE NEED TO AVOID UNWARRANTED SENTENCE DISPARITIES AMONG DEFENDANTS.**

As a general rule, it is probably true that a sentence within the Guidelines range is the best approach to preventing unwarranted sentencing disparities between similarly situated defendants. Many defendants charged with illegally re-entering the United States after deportation could make arguments similar to the ones that Almendares-Soto makes.  Almendares-Soto has not presented evidence or demonstrated unique facts that suggest to the Court it should treat his case differently from the regrettably high number of defendants that come before it charged with the same crime as Almendares-Soto.  If Almendares-Soto were entitled to a variance from the advisory Guideline range based on the reasons that he has provided, a large number of defendants would also qualify for variance of indeterminate lengths, and the Guidelines would cease to provide an objective standard for uniformity between similarly situated defendants.

In conclusion, the Court concludes that a sentence within the advisory Guideline range of 8 to 14 months would constitute an appropriate sentence, and that a downward variance from the advisory Guideline sentencing range is not warranted.

## III.   THE COURT WILL SENTENCE ALMENDARES-SOTO TO A SENTENCE OF 8 MONTHS.

The Court has considered the sentencing Guidelines and the factors set forth in 18 U.S.C. § 3553(a).  Almendares-Soto's offense level is 10 and his criminal history category is III, establishing a Guideline imprisonment range of 10 to 16 months.  Pursuant to rule 11(c)(1)(C) of

the Federal Rules of Criminal Procedure and section 5K3.1 of the sentencing Guidelines, however, the Court accepts the plea agreement which stipulates to an offense level 9.  The Court is satisfied that the agreed-upon offense level departs for justifiable reasons, which include the adoption by the Attorney General and the United States Attorney for this district of the early disposition program. An offense level of 9 and a criminal history category of III establishes a Guideline imprisonment range of 8 to 14 months.  In arriving at Almendares-Soto's sentence the Court has taken into account not only the Guidelines but other sentencing goals.  Specifically, the Court has considered the Guideline sentencing range established for the applicable category of offense committed by the applicable category of defendant.  The Court does not disagree with the Guidelines set forth by the Commission regarding re-entry cases.  The Court realizes that sometimes the sentences result in too harsh of sentences, but the Court does not harbor great disagreement with the gradations based upon felonies, aggravated felonies, and crimes of violence.  The Court recognizes that this area may not have the empirical support that some of the other areas that the Guidelines have, but it seems that the approach is not irrational, and expresses the strong political will of Congress and the notion that criminals should not be returning to the United States after being deported.  The Court should not disregard that political decision lightly and without sound reasons based in the circumstances of the individual defendant  The Court believes that a sentence of 8 months reflects the seriousness of the offense,  Almendares-Soto's  criminal  history,  promotes  respect  for  the  law,  provides  just punishment, affords adequate deterrence, protects the public, and otherwise fully reflects each of the factors embodied in 18 U.S.C. § 3553(a).  And while the Court's task as a trial court is not to come up with a reasonable sentence, but to balance the 18 U.S.C. § 3553(a) factors correctly, see United States v. Conlan, 500 F.3d 1167, 1169 (10th Cir. 2007)("[A] district court's job is not to impose a reasonable sentence.  Rather, a district court's mandate is to impose a sentence sufficient,

but not greater than necessary, to comply with the purposes of section 3553(a)(2).")(citation omitted), the Court believes a sentence of 8 months is reasonable and sufficient without being greater than necessary to comply with the purposes of punishment set forth in the Sentencing Reform Act.  The Court sentences Almendares-Soto to the custody of the Bureau of Prisons for a term of 8 months.  The Court will exercise its discretion not to place Almendares-Soto on supervised release.  Based on Almendares-Soto's lack of financial resources, the Court will not impose a fine.  Based on the United States' willingness to waive the special assessment, the Court will not require Almendares-Soto to pay a special assessment of $100.000.

**IT IS ORDERED** that the requests for a downward variance and a downward departure in the Defendant's Sentencing Memorandum, filed September 30, 2010 (Doc. 22), are denied.  The Court will sentence Defendant Carmindo Angel Almendares-Soto consistent with the sentencing range set forth in the Guidelines for a offense level of 9 and criminal history category of III.  The Court sentences Almendares-Soto to a sentence at the low end of the advisory Guidelines sentence, a sentence of 8 months.

_____
UNITED STATES DISTRICT JUDGE

*Counsel*:

Kenneth J. Gonzales
  United States Attorney
Lynn Wei-Yu Wang
  Assistant United States Attorney
Albuquerque, New Mexico

     *Attorneys for the Plaintiff*

Leon Encinias
Albuquerque, New Mexico

     *Attorney for the Defendant*